**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| RITA ROLAND, | No. ED CV 15-1825-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 4, 2016, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 7, 2015, and November 12, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 19, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.
/

**II.**

**BACKGROUND**

Plaintiff was born on August 30, 1964. [Administrative Record ("AR") at 38, 192, 199.] She has past relevant work experience as a food cashier, inventory clerk, shipping and receiving clerk, and detailer. [AR at 38, 58.]

On May 24, 2013, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging in both that she has been unable to work since May 15, 2011.[1] [AR at 192-98, 199-205.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 30, 141.] A hearing was held on October 21, 2014, at which time plaintiff appeared without representation, and testified on her own behalf. [AR at 44-65.] A vocational expert ("VE"), and plaintiff's sister, also testified. [AR at 56-60, 61-65.] On October 27, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from May 12, 2012, the alleged onset date, through October 27, 2014, the date of the decision. [AR at 30-39.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 24-26.] When the Appeals Council denied plaintiff's request for review on July 13, 2015 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

---

[1] The Court notes that the ALJ, without explanation, used May 12, 2012, as the alleged date of onset, which appears to coincide with an auto accident plaintiff was involved in on that date. [See AR at 30, 32, 39, 232; see also AR at 211 (reporting earnings in excess of $14,000 in 2011).] The difference in alleged onset dates does not affect the Court's decision herein.

2

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 12, 2012, the alleged onset date.[2] [AR at 32.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease; depressive disorder; bipolar disorder; and sciatica of the right leg. [Id.] The ALJ found the following impairments to be non-severe:

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act "at all times material to this decision." [AR at 32.]

4

history of ethanol, THC, and cocaine abuse, in remission; history of Bell's palsy; and eczema. [AR at 32-33.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 33.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a limited range of medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c),[4] as follows:

> [C]an lift and/or carry 50 pounds occasionally and 25 pounds frequently; can stand and/or walk for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; unlimited ability to push and pull; can only frequently climb ladders, ropes, and scaffolds; can frequently stoop; moderately limited in maintaining social functioning and maintaining concentration, persistence, and pace, such that the individual would need to [avoid][5] work with the public that requires more than superficial contact; and would only be able to do simple, repetitive work, where that work did not involve extended periods of concentration.

[AR at 34.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a fast food cashier, inventory clerk, shipping and receiving clerk, and detailer. [AR at 38, 58-59.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "garment folder" (Dictionary of Occupational Titles ("DOT") No. 789.687-066), "seam presser" (DOT No. 789.687-166), and "small parts assembler" (DOT No. 929.587-010). [AR at 39, 59-60.]

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] As noted by defendant, the ALJ's decision appears to contain a typographical error as it states in the RFC determination that plaintiff "would need to *involve* work with the public that requires more than superficial contact . . . ." [JS at 11 (citing AR at 34) (emphasis added).] The ALJ phrased his hypothetical to the VE as "the individual would need to avoid work with the public, except for if that work involved superficial contact" [AR at 59]; the Court agrees with defendant that the word "avoid" was intended to be used in the RFC finding.

Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 12, 2012, through October 27, 2014, the date of the decision. [AR at 39.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) rejected the opinions of plaintiff's treating psychiatrist, Mehar Gill, M.D.; and (2) rejected plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

### A. MEDICAL OPINIONS

#### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite

specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**2.   Analysis**

Plaintiff received mental health treatment from the San Bernardino County Department of Behavioral Health between July 2013 and January 2015. On intake, a Global Assessment of Functioning ("GAF") score of 45 was assessed.[6] [AR at 337.] In August 2013, plaintiff's treating

---

[6]   A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV"). A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning, e.g., inability to keep a job. However, the ALJ has no obligation to credit or even consider GAF scores in the disability determination. See 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Of note, the most recent edition of the DSM "dropped" the GAF scale, citing its "conceptual lack of clarity" and "questionable
(continued...)

psychiatrist, Mehar Gill, M.D., reported that plaintiff was experiencing depressive episodes 4-5 times per week, was clean and sober, and compliant with treatment, and she was assessed a GAF score of 48. [AR at 335-37.] On April 10, 2014, Dr. Gill again assessed a GAF score of 48. [AR at 366.] In a July 31, 2014, treatment note, Dr. Gill noted that plaintiff was compliant with her treatment and sober. [AR at 364.] Dr. Gill reported at that time that plaintiff was experiencing depressive episodes 2-3 times per week. [Id.] Also on July 31, 2014, Dr. Gill drafted a letter to the Social Security Administration in which he stated the following:

> [Plaintiff] has been under treatment since 8-29-13 suffering from severe depression. Her symptoms are[:] depression, poor sleep, lack of energy, lack of motivation, problems with concentration, forgetfulness. She also has paranoia, and auditory hallucinations. Her diagnosis is Major Depressive Disorder Recurrent, with Psychosis 296.34. She is currently on Zoloft, Trazodone, and Risperdal. Currently she is unable to work. She needs ongoing treatment.

[AR at 354.]

The ALJ gave "limited weight" to Dr. Gill's July 31, 2014, letter:

> The mental health treatment is limited in nature. Furthermore, poor compliance is consistently noted in the records. It appears with medication compliance [plaintiff's] condition stabilizes. In fact she testified with medication her mental health symptoms are significantly reduced in their severity.

[AR at 37.]

After the decision was issued, plaintiff submitted additional evidence to the Appeals Council, including a December 19, 2014, Mental Work Restriction Questionnaire completed by Dr. Gill. [AR at 355-62.] Dr. Gill noted he had been treating plaintiff since August 2013, and, based on his psychiatric evaluation and mental status examination, he found her to have marked limitations in her ability to remember work-like procedures; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in coordination with or in close proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday without interruptions from psychologically-based symptoms; perform

---

[6](...continued)
psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

at a consistent pace without an unreasonable number of and length of rest periods; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a work setting. [AR at 356-57.] He assessed a moderate limitation in plaintiff's ability to maintain attention for two-hour segments. [AR at 356.] His mental status examination reflected that plaintiff was tearful at times, anxious and fearful, and that she does not trust people. [AR at 360.] He noted that plaintiff has a problem with concentration and memory; forgets appointments; has a poor appetite, lack of energy, and motivation; feels hopeless and helpless; is paranoid and does not socialize; experiences auditory hallucinations; takes care of her personal hygiene but needs help with cooking and shopping; is isolative and withdrawn with minimal interaction with others; can follow simple instructions but cannot remember and understand complex instructions; has difficulty making decisions; and has poor interactions with others. [AR at 361.] The Appeals Council, after reviewing Dr. Gill's December 19, 2014, Mental Work Restriction Questionnaire, noted that it did not "provide a basis for changing the [ALJ's] decision."[7] [AR at 2.]

      Plaintiff contends that although the ALJ found that the record "consistently" reflected plaintiff's poor medication compliance, any period of noncompliance was "brief" [JS at 9 (citing AR at 37, 364, 376)], and any noncompliance "was a symptom" of plaintiff's mental disability. [Id.] Additionally, plaintiff contends that the ALJ erred by rejecting Dr. Gill's opinion on the ground that plaintiff's medications improved her condition, as the ALJ "did not view [plaintiff's] improvement contextually" and, despite any improvements, Dr. Gill still found plaintiff to be "markedly limited" in many areas. [Id. (citations omitted).] Finally, plaintiff contends that it is "reasonably possible" that if the ALJ had been able to review Dr. Gill's detailed December 19, 2014, Mental Work Restriction Questionnaire, that report would have "changed the ALJ's decision." [AR at 10.]

---

   [7] The Appeals Council also referenced an April 10, 2015, "medical source statement" received from Dr. Gill but stated that statement was "new information . . . about a later time . . . [and] does not affect the decision about whether you were disabled beginning on or before October 27, 2014." [AR at 2.] That document, along with other records from Phoenix Community Counseling dating from January 16, 2015, to June 12, 2015, that were rejected by the Appeals Council for the same reason, was not made part of the record. [Id.]

Defendant counters that the ALJ's RFC contained "significant mental restrictions" and, while the ALJ was not able to review Dr. Gill's December 2014 opinion, "the RFC nonetheless accommodates many of the limitations Dr. Gill assessed, namely, difficulty following complicated instructions, maintaining attention for two hour segments, and working closely with others." [JS at 11-12 (citing AR at 355-62).] Defendant also argues that the reasons given by the ALJ for discounting Dr. Gill's earlier report "would apply as well to the later submitted documents." [JS at 12.]

Preliminarily, the ALJ mischaracterized plaintiff's testimony regarding the effect of medication on her mental health symptoms. [AR at 37 (stating that plaintiff testified her medications "*significantly*" reduce the severity of her mental health symptoms) (emphasis added).] In fact, plaintiff testified that the medication makes her auditory hallucinations less frequent and "not as harsh," i.e., more "like a whisper," but stated that she still hears them daily. [AR at 51-53.] Dr. Gill's treatment records reflect that plaintiff was experiencing 2-3 depressive episodes a week as of July 2014 [AR at 364], and also reflect that as of November 2014 plaintiff was still experiencing daily auditory hallucinations and paranoia. [AR at 370.]

Additionally, although the ALJ stated that "poor [medication] compliance" is "*consistently*" noted in the records, he failed to provide any citation to the record to support this finding. [See AR at 37 (emphasis added).] Defendant points to records reflecting "poor" compliance in October 2013, January 2014, and March 2014 [JS at 14 (citing AR at 342, 340, 339 respectively)], but also to records reflecting "good" compliance in October 2013, July 2014, and November 2014. [Id. (citing AR at 371, 375, 373 respectively).] Where approximately half of the records reflect "good" compliance, and approximately half reflect "poor" compliance, plaintiff's poor compliance is no more or less "consistent" than her "good" compliance. As the Ninth Circuit recently explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There

can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the] treatment notes. Those notes show that although [plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Based on the record here, the ALJ's statements regarding plaintiff's alleged "consistent" noncompliance with her medications, and "significant" reduction in her mental health symptoms with compliance, were not specific and legitimate reasons to give only "limited weight" to Dr. Gill's July 2014 opinion. Therefore, defendant's argument that Dr. Gill's December 2014 opinion may be discounted for the same reasons given by the ALJ with respect to Dr. Gill's earlier opinion fails.

Moreover, the ALJ also gave limited weight to the November 16, 2013, opinion of the psychiatric examiner, Khushro Unwalla, M.D., who assessed a GAF score of 68 and "no more than mild limitations in any domain of functioning." [AR at 37 (citing AR at 329-33).] The ALJ noted that although plaintiff's mental health treatment records were limited, "they do illustrate some significant symptoms," and she continues to experience auditory hallucinations, "which would undoubtedly result in functional limitations." [Id.] Instead, the ALJ gave "greater weight . . . to the moderate limitations in concentration and social functioning assessed by the State agency review physicians." [Id. (citing AR at 66-97, 101-38).] However, the State agency review physicians, like the ALJ, did not have the benefit of Dr. Gill's December 19, 2014, opinion finding a number of "marked" functional limitations. As the only medical opinions of record given any weight, the opinions of the non-examining physicians may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041.

11

With the addition of Dr. Gill's later-submitted December 2014 opinion finding marked functional limitations based on his treatment of plaintiff from August 2013 (more than a year prior to the October 2014 hearing and decision), the state reviewing physicians' opinions are no longer supported by or consistent with the record evidence and, therefore, under the circumstances here, no longer serve as substantial evidence by themselves.[8]

Accordingly, the ALJ on remand shall reconsider the medical records, including the records submitted by plaintiff to the Appeals Council.

## B. CREDIBILITY

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, and defendant counters those arguments. [JS at 15-21.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim, 763 F.3d at 1163; 20 C.F.R. §

---

[8] The Court notes that unlike his December 2014 report, Dr. Gill's July 2014 opinion contained no assessment of plaintiff's functional limitations and consisted of little more than a recitation of her symptoms, diagnosis, and medications, and Dr. Gill's opinion that plaintiff is "unable to work . . . [and] needs ongoing treatment." [AR at 354, 356-62.]

12

404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 33-37], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ found plaintiff's allegations to be "less than fully credible" because the alleged severity of her symptoms was inconsistent with the objective medical evidence and suggested symptom exaggeration; plaintiff received conservative treatment for her conditions, which responded to medication; and plaintiff's symptoms did not prevent her from performing "relatively normal activities of daily living." [AR at 35-36.]

Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ on remand must also reconsider plaintiff's credibility and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-

94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand shall reassess the medical opinions, including the later-submitted opinions of Dr. Gill, and any resulting RFC limitations. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including, if warranted, a legally sufficient explanation for discounting any doctor's opinions regarding plaintiff's severe impairments and limitations. Next, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. See Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

Finally, the ALJ shall reassess plaintiff's RFC and determine at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.[9]

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 18, 2016

                                          PAUL L. ABRAMS
                              UNITED STATES MAGISTRATE JUDGE

---

[9] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.